Argued and submitted April 20, reversed and remanded June 28, 2000

## Andrew D. BIGLEY,
### Shelly M. Kelso Bigley, West Hills Streams, and Elizabeth Callison,
*Petitioners,*

*v.*

## CITY OF PORTLAND
### and Metro,
*Respondents.*

(99-089; CA A109238)

4 P3d 741

Andrew H. Stamp argued the cause for petitioners. With him on the brief was Schwabe, Williamson & Wyatt, P.C.

Kenneth Helm argued the cause for respondents. With him on the brief was Peter A. Kasting.

Before Kistler, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

DEITS, C. J.

**DEITS, C. J.**

Petitioners seek review of LUBA's dismissal as untimely of their appeal from the Portland City Council's 1997 approval of amendments to the master plan for the Metro Washington Park Zoo. We reverse and remand.

We quote the facts that are relevant to our discussion as they are stated in LUBA's opinion:

"On April 28, 1993, the City of Portland Land Use Hearings Officer approved amendments to the Zoo Master Plan. With the amendments approved on April 28, 1993, the Zoo Master Plan included, among other things, a temporary 129-space parking lot.

"* * * * *

"On February 12, 1997, Metro applied for approval of amendments to the Zoo Master Plan. The application that was submitted on February 12, 1997, included a proposal to convert the temporary parking lot to a permanent parking lot. On April 1, 1997, the city provided notice of an April 22, 1997 hearing before the land use hearings officer to consider the proposed amendments to the Zoo Master Plan. The April 1, 1997, notice explained:

" 'The plan includes many individual projects, listed below, some of which will increase building area, while others are modifications to or replacements for existing facilities. The following list is a summary of the proposed projects[.]'

"Following the above-quoted portion of the notice, [23] separately described projects and improvements are identified. Conversion of the 129-space temporary parking lot to a permanent parking lot is not among the projects and improvements that are specifically identified in the notice.

"On April 7, 1997, a second notice was issued to provide notice of requested adjustments to landscaping requirements for an unrelated parking lot. Both the April 1, 1997 and April 7, 1997 notices included the following statement:

" 'The Planning Bureau will be making a recommendation on this proposal; our report and recommendation will be available 10 days before the hearing. If you call * * * the receptionist can mail you the report, or you may

pick it up at our office * * *.' ([E]mphasis in original deleted.)

"Petitioners received the April 1, 1997 and April 7, 1997 notices.

"On April 21, 1997, one day before the April 22, 1997 hearing, the application was amended to add [certain] changes to the Zoo Master Plan with respect to the disputed parking lot[.]

"* * * * *

"The staff report to the hearings officer that was issued prior to the April 22, 1997 hearing explains that the temporary parking lot will be converted to a permanent lot. The staff report notes that objections had been received by the city regarding the proposal to convert the temporary lot to a permanent lot. The staff report also notes receipt of complaints that some neighbors may not know that the temporary lot is to be converted to a permanent lot.

"* * * * *

"Following the April 22, 1997 hearing, the hearings office approved the amended Zoo Master Plan on May 19, 1997. Because petitioners did not appear in writing or orally at the April 22, 1997 hearing, petitioners did not receive notice of the May 19, 1997 hearings officer's decision or the subsequent appeal of the hearings officer's decision to the city council. Because petitioners did not participate before the city council, petitioners did not receive notice of the city council's August 7, 1997 decision granting approval of the amended Zoo Master Plan.

"On May 25, 1999, petitioners filed their notice of intent to appeal challenging the city council's August 7, 1997 decision." (Footnotes and citations to the record omitted.)

The City and Metro moved to dismiss the appeal to LUBA on the ground that it was not filed within the 21-day period allowed by ORS 197.830(8). Petitioners responded that their appeal was nevertheless timely under ORS 197.830(3). That statute provides:

"If a local government makes a land use decision without providing a hearing or the local government makes a land use decision *which is different from the proposal described in the notice to such a degree that the notice of the*

*proposed action did not reasonably describe the local government's final actions,* a person adversely affected by the decision may appeal the decision to [LUBA] under this section:

"(a) *Within 21 days of actual notice where notice is required*; or

"(b) Within 21 days of the date a person knew or should have known of the decision where no notice is required." (Emphasis added.)

Petitioners maintain that their principal concern is with the part of the city's decision making the parking lot permanent, that they were never provided with the required notice of that aspect of the proposal or the decision, and that the notices that the city gave did not reasonably describe the final actions; the notices said nothing about the conversion of the parking lot that was effected through the city's final decision.[1]

■      LUBA granted the motion to dismiss and petitioners seek our review. Although their argument includes policy contentions and expressions such as "fighting city hall," the *essence* of it is rooted in the language of ORS 197.830(3): The city's notices said nothing about the permanent parking lot proposal; the decision approved the proposal; hence, the notices did not reasonably describe the final actions. Petitioners note that ORS 197.763(3)(a) requires notices to

"[e]xplain the nature of the application and the proposed use or uses which could be authorized[.]"

Consequently, petitioners believe that

"the notice must explain all of the proposed uses—there is no specification, as LUBA implicitly holds, that only 'some' or 'most' of the proposed uses need to be explained in the notice if the proposal is multi-faceted."

The city and Metro (respondents) answer:

"Petitioners appear to argue that ORS 197.830(3) requires renotification unless the original notice would,

---

[1] There does not appear to be any dispute that this is a situation "where notice is required," and that paragraph (a) rather than paragraph (b) of the statute is the relevant provision.

with respect to the local government's *final decision*, provide all the information ORS 197.763(3) requires for notices of the *proposal*. This argument confuses the purposes of ORS 197.763(3) and ORS 197.830(3). The first statute mandates contents of initial notices and how those notices describe *proposals*. The second statute addresses *final decisions* and asks whether the final decision 'is different from the proposal described in the notice to such a degree that the notice of the proposed action did not reasonably describe' the final action. ORS 197.830(3) recognizes that proposals change during the review process. It does not make sense to require equal detail when reviewing how a notice describes a known proposal and how the same notice describes a final decision at the end of the process." (Emphasis respondents'.)

We think that respondents draw too sharp a line between the two statutes, and that they also draw the line in the wrong place. ORS 197.763(3)(a) requires that notices explain the "proposed use or uses which *could be authorized*." (Emphasis added.) Correspondingly, ORS 197.830(3) comes into play when the land use decision made differs "*from the proposal described in the notice*" to an extent that the "*notice of the proposed action* did not reasonably describe the local government's final actions[.]" (Emphasis added.) We do not share respondents' understanding that the first statute is concerned only with "proposals" and the second only with "final decisions." As we read them, both statutes are concerned with both things, although they view the two things from opposite perspectives. ORS 197.763(3)(a) contains a prospective requirement that the notice of the proposal apprise recipients of all uses that could be authorized by the final decision. ORS 197.830(3) deals with the after-the-fact question of whether the final decision differs from the proposal described in the notice to the extent that the notice fails to "reasonably describe" the "final actions."

Respondents *are* correct in stating that "ORS 197.830(3) recognizes that proposals change during the review process." However, they are mistaken in their inference that that statute affirmatively endorses the approval of uses or the making of decisions that differ in cognizable respects from the uses and other particulars described in the original notice. Rather, ORS 197.830(3) provides a remedy, in

the form of the tolling of the appeal period, to adversely affected persons who are misled by the deviation between the notice of the proposal and the substance of the decision.

The two statutes are unambiguous and they complement and provide "context" for one another. To comply with ORS 197.763(3)(a), the notice here was required to describe the proposed conversion of the parking lot from temporary to permanent. ORS 197.830(3) does not purport to excuse that failure. Whether the failure was sufficient in degree to give rise to the tolling remedy prescribed by ORS 197.830(3) is another question. However, the answer is not difficult. There is simply no way that a notice that made no mention of the proposed action concerning the parking lot, but did specifically enumerate a myriad of other actions that were embodied in the same proposal, can be said to have "reasonably describe[d]" the "final action" affecting the parking lot.

■    Respondents, and in some measure LUBA, took the view that the number and kind of uses that must be specifically mentioned in the notice should vary inversely to the overall complexity of the proposed land use decision and the number of uses it entails. Consequently, in a case such as this, where the scope and number of uses encompassed in the proposed Zoo Master Plan amendments were great, they would conclude that the omission of the permanent parking lot use from the notices should not give rise to the tolling effect of ORS 197.830(3). Petitioners disagree and assert that, under respondents' position, local governments could effectively "bury" matters of substantial importance to some sectors of the public in massive proposals that deal with large numbers of specific uses. However, those arguments relate to policy and to what the relevant statutes *should* say. Our concern must be limited to what they *do* say, and ORS 197.830(3) cannot be understood as containing the exception for large or "multifaceted" proposals that respondents urge us to read into it.

■    LUBA and respondents also stress that both of the notices that petitioners received alerted them to the fact that they could call the city for further information, obtain copies of the staff report, and attend the public meeting. Had petitioners done any of those things, according to respondents,

they would have been fully alerted to the proposal to convert the parking lot to permanent status. However, the relevant statute plainly pertains only to what is *discernible* from the written notice itself. Although the tolling effect of ORS 197.830(3)(a) does cease when actual notice is obtained, unlike paragraph (b), it does not demand reasonable diligence to acquire information from other sources that is missing in the notice itself. We recognize that our reading of the statute may present the city with practical difficulties in giving effective notice and that there is some logic to respondents' and LUBA's view. Nonetheless, as with the matters discussed in the preceding paragraph, only the legislature can change the statute to accord with their logic.

■    Finally, to whatever extent respondents' argument and LUBA's rationale contemplate an implicit *de minimis* exception in the statute, we do not agree that the situation here would come within any such exception. The order in the 1993 proceeding through which the temporary lot was established specifically observed:

> "It should be noted that the application did not include a request for a permanent parking lot and nothing in this decision authorizes a permanent parking lot. *Such a proposal would be subject to a separate Conditional Use proceeding.*" (Emphasis added.)

Further, the city staff report regarding the present proceedings referred to neighborhood objections to the conversion and to concerns that the notices that were theretofore given did not suffice to alert all interested persons that the permanent status of the lot was being proposed. Nothing in those surrounding circumstances, or in the inherent scope of this proposal to convert an acre of open space land to a parking lot, was consistent with viewing or treating it as a *de minimis* matter.

We hold that the appeal was timely under ORS 197.830(3), and that LUBA erred by dismissing it.

Reversed and remanded.